Cooke, J.
The issue in this case arises in the context of a motion to dismiss on the grounds that the complaint fails to state a cause of action. Plaintiff is a contract packager primarily engaged in the manufacture and packaging of proprietary, household and pharmaceutical aerosol products. Basically, it is claimed that plaintiff suffered losses from adverse publicity concerning the use of aerosols and that defendants; through their public relations activities, intentionally caused these losses.
A description of each of the defendants is necessary to an *456 understanding of plaintiff’s argument. Defendant Ruder & Finn is a public relations firm of which defendant Norman Weissman is senior vice-president. Defendant William Ruder is president of Ruder & Finn and was the founder of defendant PIPR, Inc., apparently a nonprofit organization formed to engage in public relations endeavors in the public interest. Ruder & Finn employs defendant Lynn Deming as an account executive and has sometimes loaned her services to PIPR. It bears commenting that, although the circumstances suggest varying degrees of responsibility, and as to some defendants perhaps no intention to harm, plaintiff’s pleadings are drafted in terms which, for the most part, ascribe the alleged intention to harm to all defendants.
Underlying this litigation is plaintiff’s allegation that starting in February, 1974 defendants engaged in a scheme and conspiracy to intimidate it into retaining Ruder & Finn to do public relations work to combat publicity centering around a theory linking fluorocarbon propellants used in certain aerosol products to the destruction of the earth’s ozone layer. Assuming this theory is proven, the concern is that depletion of the ozone layer through the use of aerosols will increase the amount of ultra violet radiation reaching the earth from the sun, the result of which would be significant increases in the incidence of skin cancer.
The adverse publicity concerning aerosol products stems at least partly from, and may even have originated with, the activities of the Natural Resources Defense Council, Inc. (NRDC), an organization seeking to protect the environment, which urged the Federal Consumer Products Safety Commission to ban the use of certain aerosol products. Defendant PIPR was retained by NRDC to promote NRDC’s position and, to this end, a press conference was organized to bring to the attention of the public the ozone depletion theory. Shortly thereafter, in connection with discussions concerning plaintiff’s possible retention of Ruder & Finn to combat adverse publicity, plaintiff’s president received a letter from William Ruder. The letter, which is almost entirely reproduced herein, speaks for itself:
"About a year ago I personally started a Public Interest PR firm which is a nonprofit organization known as PIPR, Inc. It is supported by a couple of foundations who have given us money to work on three accounts. One is the Natural Re *457 sources Defense Council (in connection with their work in the atomic and nuclear energy field) * * *.
"Through a whole series of circumstances, NRDC got involved in this aerosol situation and asked PIPR to help. We loaned Lynn Deming from the Ruder & Finn staff to them to help put on that press conference.
"The net result of all of this is that we are about as close to NRDC and this new thing that they have taken on (which is really beyond our original charter) as anybody can be. It would seem to me that this' would be about as useful a relationship to you and your associates in the aerosol industry as possible, simply because of my dual relationship (90% with Ruder & Finn and 10% with PIPR) and that we really could function as a membrane through which some reasonable and thoughtful communications could take place, rather than permit NRDC to square off on an uninformed basis at whatever target might be in sight. Once or twice this exact situation has arisen between Nader and Coca-Cola in respect to the caffeine situation, and simply because of my relationship with both I have arranged several marvelously productive sessions between Ralph and Paul Austin that resulted in Ralph understanding the situation—backing off, and nothing coming out in the public press.
"In this crazy society one of the key things is to get people to start acting reasonably and putting them into meaningful communications rather than underwriting 'hollering matches.’ "I want to emphasize that PIPR has an entirely separate and public Board of Directors. It is not part of Ruder & Finn. I give it a little bit of time and occasionally Ruder & Finn lends it personnel. That’s about the whole story as honestly and as straight as I can give it to you.”
Ruder & Finn was not retained by plaintiff which thereafter suffered substantial losses resulting from a decline in sales of aerosol products. Plaintiff commenced this action, seeking six million dollars in consequential damages and six million in punitive damages, alleging that its losses result from the activities of the defendants in furtherance of the scheme and conspiracy to intimidate it to retain Ruder & Finn and the continued harassment of the aerosol industry by PIPR and NRDC. It should be noted that plaintiff is not seeking damages in respect to fees it never paid but rather is seeking to recoup losses allegedly resulting from public concern over the use of aerosols.
*458 Special Term construed the pleadings as purporting to frame four possible theories of recovery (conspiracy, duress, defamation and prima facie tort) and, rejecting each of these, dismissed the complaint for failure to state a cause of action. Leave to replead was also denied, and the Appellate Division affirmed on the opinion of Special Term.
Before this court, plaintiff argues that its complaint, or an amended complaint, states a valid cause of action for prima facie tort and that dismissal of the action under CPLR 3211 (subd [a], par 7) was premature. For the reasons that follow, we reject these arguments.
It is well established that one may recover for injury resulting from what has been styled a "prima facie tort” (see, e.g., Advance Music Corp. v American Tobacco Co., 296 NY 79; Opera on Tour v Weber, 285 NY 348). In this country, this tort evolved from the principle, expressed by Mr. Justice Holmes, that "prima facie, the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape” (Aikens v Wisconsin, 195 US 194, 204). The concept has developed since then and it has been commented that "[t]he key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful” (Ruza v Ruza, 286 App Div 767, 769; see, e.g., Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 405-406). Further, an essential element of the cause of action is an allegation of special damages (see Nichols v Item Publishers, 309 NY 596, 602; Knapp Engraving Co. v Keystone Photo Engraving Corp., 1 AD2d 170).
Although the complaint fails to allege special damages, and hence plaintiff has sought to amend its pleadings, it is our view that there is a failure to state a cause of action even in the amended complaint sought to be interposed. Viewing the complaints most favorably to plaintiff, we conclude that the defects are more than those of pleading since the alleged conduct of defendants simply does not constitute the tort of intentional harm without excuse or justification.
Seeking to fit defendants’ conduct within the principles of intentional tort, plaintiff focuses on its allegation that defendants’ purpose was to obtain a fee from plaintiff to combat adverse publicity by first mounting their own public relations campaign against its product. Further, explaining the thrust *459 of its allegations, plaintiff asserts that the question is not whether NRDC (not a defendant here) was justified in espousing the alleged dangers of aerosols but whether defendants can be deemed justified in using the cause of NRDC in furtherance of the alleged purpose of coercing plaintiff to pay substantial sums of money in order to get defendants to "back off”.
Plaintiff’s manner of viewing its own allegations neglects other aspects of the situation in which it finds itself. For example, it is noteworthy that plaintiff’s losses, assuming such to have resulted from adverse publicity, were proximately caused by a third party, NRDC, which is not a defendant in this action. In this respect, lamenting that its action was dismissed in the courts below prior to any pretrial discovery, plaintiff asserts that through discovery it may yet be able to prove that the representation of NRDC was a mere sham to disguise defendants’ true purpose and that it was in fact PIPR that got NRDC into the ozone controversy in the first place and not the other way around. It is asserted that discovering these facts would help on trial to establish the absence of excuse or justification. Assuming even these facts, however, still more is needed to establish plaintiff’s case.
Even if it be true that at least some of the defendants intended to harm plaintiff, and that to this end defendants caused NRDC to become involved in this controversy, to determine if this includes the elements of the tort of intentional harm, there remains the question of whether their conduct is without excuse or justification. Of course, one can always advance an explanation for one’s conduct but, in this type of case, it must be an excuse or justification which the law will recognize (Advance Music Corp. v American Tobacco Co., 296 NY 79, 85, supra; compare Beardsley v Kilmer, 236 NY 80, with American Bank & Trust Co. v Federal Bank, 256 US 350). Underlying the question of excuse or justification, it has been noted, is the question of whether the public’s gain outweighs the harm to another (see Prima Facie Tort, Ann., 16 ALR3d 1191, 1220-1227).
In the instant matter, whatever the ultimate conclusion in the scientific community, there were at least some scientists who subscribed to the ozone depletion theory espoused by NRDC. Federal regulations were proposed, and, since a potential health hazard was recognized, a social justification is apparent even if it is someday conclusively determined that *460 NRDC’s views were incorrect. Nevertheless, plaintiff asserts that this is not a justification for defendants’ conduct since defendants were not, it is alleged, motivated by the public interest.
This assertion by plaintiff should be rejected. The motivation plaintiff ascribes to defendants, malicious as it may be, has not been recognized as actionable in circumstances where allegations of possible wrongdoing are acted upon by government agencies (see Brandt v Winchell, 3 NY2d 628, 634-635; cf. Al Raschid v News Syndicate Co., 265 NY 1). The same principle should apply here for, while no one suggests that plaintiff knowingly manufactured a product the use of which may be harmful, it may be necessary to ignore the motivation of some or all of the defendants in favor of the need to explore the situation. Put otherwise, since use of plaintiff’s product may be injurious, that perhaps some defendants were motivated to harm plaintiff by alerting the public as to the potential hazard does not require a conclusion that these defendants’ conduct is without justification. Whatever defendants’ motivation, the net effect is that various agencies of government, which are presumed to have acted properly, found a reasonable basis for concluding that aerosols may damage the environment and this must be deemed a justification which the law will recognize.
Whether our conclusion is premised on a desire to prevent law suits such as this from discouraging others from alerting the public to the dangers of a product, or simply to prevent the makers of a potentially harmful product from attempting to recover their losses resulting from public awareness by claiming that the "gadfly” was motivated by ill will, the answer is that plaintiff cannot recover in this action. Indeed, the harm to plaintiff, as noted in its pleadings, is one to the entire aerosol industry and, hence, for that reason alone should not be actionable (cf. Oma v Hillman Periodicals, 281 App Div 240, 242). Further, as between the public and plaintiff’s industry, the greater injustice is to the public if controversies such as this are not expeditiously considered and acted upon by all concerned.
The court, of course, does not condone the conduct or motives manifested by some of the defendants as averred in this matter. While those engaged in public relations will often be hired to combat adverse publicity, one can understand the reaction of a plaintiff upon learning that a public relations *461 firm, which somehow became "involved” in a matter of social concern that nonetheless threatened to destroy plaintiffs business, would offer to try to limit the public’s awareness, for a fee. Nevertheless, for the reasons stated, we hold that defendants’ involvement in a publicity campaign alerting the public to the potential harm resulting from the use of plaintiffs product does not state a cause of action for intentional tort. However morally reprehensible the asserted conduct of some of the defendants may be considered to be, it is not actionable in the courts, and hence plaintiffs complaint is insufficient as a matter of law.
In conclusion, it is noted that "leave to plead again shall not be granted unless the court is satisfied that the opposing party has good ground to support his cause of action” (CPLR 3211, subd [e]). Under these circumstances, Special Term correctly concluded that leave to replead was not warranted. Finally, it is commented that plaintiff’s reliance on Rovello v Oroñno Realty Co. (40 NY2d 633) is misplaced. That case is distinguishable because, as discussed, the complaint is not sufficient on its face, and, as a matter of law, there is no reasonable possibility that plaintiff will prevail on the merits. The motion to dismiss was therefore properly granted.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.