■ BARBARA GORDON, Respondent, v ROCHE LABORATORIES, a Division of Hoffman-LaRoche, Inc., et al., Defendants, and LESTER, SCHWAB, KATZ & DWYER, Appellant. — Order of the Supreme Court, New York County (Klein, J.), entered September 11, 1981, denying the motion of defendant Lester, Schwab, Katz and Dwyer (Lester, Schwab) to dismiss the first, second and third causes of action contained in plaintiff's complaint, reversed, on the law, with costs, and the motion granted. Appeal from order of the Supreme Court, New York County (Klein, J.), entered March 29, 1982, denying the motion of defendant Lester, Schwab for reargument, dismissed, without costs, as nonappealable. Plaintiff brought action against Roche Laboratories, a division of Hoffman-LaRoche, Inc. (Roche), arising out of her ingestion of excessive amounts of Valium, a product manufactured by Roche. In that action Roche was represented by Lester, Schwab. Plaintiff was deposed in the Roche action over a number of nonconsecutive days. Pursuant to direction by Roche, and while the deposition was still incomplete and uncorrected, Lester, Schwab forwarded segments of the transcript to Cohn, Glickstein, Lurie, Ostrin, Lubell & Lubell (Cohn, Glickstein), a firm of attorneys which represented Roche in other matters. At this point it is appropriate to note that, as a result of experiences in the ingestion of excessive amounts of Valium, plaintiff wrote a book entitled I'm Dancing As Fast As I Can.[*] The motion picture rights to the book were sold to Paramount Pictures Corporation. Cohn, Glickstein sent two letters to the law firm of Simpson, Thatcher & Bartlett, attorneys for Paramount, which detailed alleged discrepancies between the statements made by plaintiff in her incomplete deposition and in her hospital records with her relation of the same or similar events in her book. Somewhat later Cohn, Glickstein sent copies of these letters to Bantam Books, which published the paperback edition of I'm Dancing As Fast As I Can, pursuant to agreement with Harper & Row, the hardcover publisher of the work. Based upon these letters plaintiff brought this action against Roche; Lester, Schwab; and Cohn, Glickstein. The complaint contained four causes of action. The first cause alleged that defendants sought to harass and intimidate plaintiff to the end that her physical and mental health would be impaired; the second cause was bottomed on the theory of prima facie tort; the third count was based upon tortious interference with contractual relations and the fourth sought punitive damages. Lester, Schwab moved to dismiss the complaint as legally insufficient, pursuant to CPLR 3211 (subd [a], par 7), or in the alternative, for summary judgment pursuant to CPLR 3212. Special Term granted the motion as to the fourth cause only, noting that a separate cause of action for punitive damages will not lie (*Mastro Jewelry Corp v St. Paul Fire & Mar. Ins. Co.*, 70 AD2d 854). It denied the motion with respect to the first three causes of action. We think Special Term should have granted the motion in its entirety. The standards applicable to an action in tort for the intentional infliction of emotional harm are laid down in *Fischer v Maloney* (43 NY2d 553). The elements required are *extreme* and *outrageous* conduct which intentionally or recklessly causes emotional distress to another. The conduct must be such as to exceed all bounds normally tolerated by decent society. We do not perceive the conduct of Lester, Schwab as transcending the norms of conduct normally tolerated by decent society. Indeed, it is not unusual for an attorney compelled to deal with a complex scientific matter to refer the transcript of an unfinished deposition to his client, or to its general counsel, to obtain leads for further examination. Certainly, there is nothing malevolent or mischievous about it. In the circumstances the first cause of action cannot stand. Similarly, the

---

[*] The book resulted in an action for defamation by a psychiatrist against plaintiff and the publishers. We held that the complaint in that action was insufficient as a matter of law and directed that it be dismissed (*Allen v Gordon,* 86 AD2d 514).

second cause fails to state the elements necessary to sustain an action for prima facie tort. Such an action requires a demonstration of the intentional infliction of harm by an act, or series of acts, lawful in themselves, committed without excuse or justification and by consequence of which damage is inflicted upon another (*ATI, Inc. v Ruder & Finn,* 42 NY2d 454). Actual damage is an essential ingredient of the action and such damage must be specifically pleaded. Implied damage will not suffice. Since no such showing is here made, the second cause is insufficient. Finally, there is the cause of action which purports to allege tortious interference with plaintiff's contractual relations with Harper & Row and Paramount. The only claim advanced to support this cause of action is that Paramount has fictionalized her book rather than present it as the biography which she intended. However, motion picture producers are notorious for doing this and there is nothing advanced to indicate that this fictionalization is causally related to the letters sent by Cohn, Glickstein to Paramount or to Harper & Row. Parenthetically, it should be noted that plaintiff could have prevented this result by an appropriate clause in the contract between her and Paramount. Her failure to do so is indicative that her newly found "intent" is no more than a peg on which to hang this cause of action. Concur — Sandler, J. P., Markewich, Bloom, Fein and Milonas, JJ.

