**Dr. Kenneth F. SOLINSKY, Plaintiff,**

v.

**The ARTHRITIS FOUNDATION (a Georgia Corporation) a/k/a Long Island Arthritis Foundation, Defendant.**

**No. 83 CV 5631.**

United States District Court,
E.D. New York.

May 16, 1986.

Haas, Greenstein, Hauser, Sims, Cohen & Gerstein, New York City, for plaintiff; by Noel Hauser.

Satterlee & Stephens, New York City, for defendant; by Robert M. Callagy.

## MEMORANDUM AND ORDER

PLATT, District Judge.

## INTRODUCTION

Plaintiff commenced this action three years ago and the case was assigned to the Honorable Frank X. Altimari, District Court Judge for the Eastern District of New York sitting in Uniondale, New York. Following Judge Altimari's appointment to the Court of Appeals for the Second Circuit the case was reassigned on March 11, 1986 to the undersigned. The matter is presently before us on defendant's motion for summary judgment on all the remaining outstanding claims in the action. The Court's jurisdictional authority is vested pursuant to 28 U.S.C. § 1332(a), as plaintiff is a New York resident and the defendant is a division of a Georgia corporation and the amount in controversy exceeds $10,-000.00 exclusive of interest and costs.

A rather detailed recitation of the relevant facts and the procedural history of the case is a necessary prelude to the Court's decision.

### A. *The Facts*

Dr. Solinsky is a successful and skilled physician who, for the past ten years has specialized in the treatment of rheumatism and arthritis. In 1977 plaintiff's name was placed on a referral list published and circulated by the defendant identifying qualified physicians in the New York metropolitan area who "are members of the New York Rheumatism Association and/or the American Rheumatism Association, the medical associations most concerned with arthritis." Pl's 3g Statement at ¶ 4. The publication provided consumers with valuable and helpful information, but clearly indicated that "in addition to the physicians listed, there are many others in the community who are well qualified to treat patients with rheumatic diseases." *Id.*

In 1983, in response to a recommendation by the National Council of the Arthritis Foundation, the defendant changed the criteria for inclusion on the list. The National Council's directive urged the local chapters to replace subjective approval with objective standards as the bases for selecting doctors for the list. Consequently, the Long Island Arthritis Foundation revised their referral list retaining only those doctors who were board certified or board eligible in rheumatology.

To become board certified in rheumatology is at least a five year process. A physician must first complete a three-year course of study in Internal Medicine and then pass a standardized examination on that subject. Following its successful com-

pletion, the physician must then undertake two additional years of training in the subspecialty of rheumatology and pass a second test on this subject. A doctor is board eligible if he or she has fulfilled all of the above requirements except has not yet passed the standardized exam in rheumatology. Def's Mem. at p. 9.

Plaintiff, admittedly, is neither board certified nor board eligible. Hence, his name was dropped from the defendant's referral list. However, as was true prior to the adoption of the new criteria, "[t]he list does not state or imply that other physicians are not qualified to treat this illness." McAsey Aff. at ¶ 4.

Defendant has offered the following reasons for the adoption of the new objective standards: (1) limitation of any malpractice liability that might result from subjective determinations regarding the suitability and competence of doctors to be on the list, (2) the requirement rationally relates to high quality treatment because board certification and board eligibility require additional training, and (3) avoidance of any accusations of favoritism or unfortunate imbroglios such as the case at bar. *Id.* Plaintiff has not heeded the defendant's credible explanation and for three years has nurtured the belief that the defendant acted maliciously and without probable cause. Second Amended Complaint at ¶ 22.

### B. *Procedural History*

The docket sheet of this case is replete with entries and bears summarizing before the Court discusses the pending motion.

In response to the initial complaint which included claims under federal and state antitrust laws, and for breach of contract, unfair competition and prima facie tort, the defendant moved to dismiss. To foreclose a decision on the merits, plaintiff amended the complaint on March 14, 1984. Subsequently, however, the amended complaint was dismissed in its entirety, but the Court granted plaintiff leave to amend his pleadings, yet again, or to institute suit in Nassau County Supreme Court. Plaintiff chose the first option and filed a second amended complaint along with an application for a preliminary injunction requiring the defendant to restore his name to the referral list. Judge Altimari denied the application on the grounds that plaintiff suffered no irreparable harm. Simultaneously he dismissed plaintiff's federal antitrust claim based on the lack of a sufficient nexus with interstate commerce. *See* Callagy Aff. at ¶ 3.

Plaintiff appealed the decision to the Second Circuit. The Court of Appeals affirmed the denial of the preliminary injunction, but held that it lacked jurisdiction to review the interlocutory order dismissing plaintiff's first claim for violation of the Sherman Act. *Id.* at ¶ 4.

Thereafter on January 15, 1986 plaintiff filed a Pre-Trial Order which omitted a number of the claims contained in the second amended complaint—specifically, the second claim alleging violation of New York's Donnelly Act, the State antitrust statute codified at N.Y.Gen.Bus.Law § 340 et seq. (McKinney's 1965), the fourth claim alleging violation of plaintiff's right to due process of law, the fifth claim alleging unfair competition, and the sixth and last claim alleging breach of contractual obligations. Def's Mem. at p. 5. The Pre-Trial Order lists as issues only the prima facie tort claim and includes for the first time a claim for the intentional infliction of emotional distress. Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, a Pre-Trial Order "shall control the subsequent course of the action unless modified by a subsequent order." Thus, this Court considers plaintiff to have abandoned claims, two, four, five and six of the second amended complaint.

Upon receipt of the Pre-Trial Order the defendants requested and received leave from Judge Altimari to submit a motion to dismiss the remaining claims in the case. The matter having been reassigned before the motion was argued, the fate of plain-

tiff's lawsuit now resides with the undersigned.[1]

## DISCUSSION

The Rule 56 summary judgment mechanism operates to assure the just, speedy and inexpensive determination of any action. *Albatross Shipping Corp. v. Stewart*, 326 F.2d 208 (5th Cir.1964). A litigant is entitled to summary judgment when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *Crystal City v. Del Monte Corp.*, 463 F.2d 976 (5th Cir.) *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972).

The essential facts in this case are not disputed. Plaintiff's name was removed from the defendant's referral list when the criteria for inclusion changed. The issue for this Court to decide is whether the defendant is entitled to judgment as a matter of law on the remaining claims in the action.

### A. *Prima Facie Tort*

A recovery for prima facie tort affords a remedy for "the infliction of intentional harm resulting in damage without excuse or justification, by an act or series of acts which would otherwise be lawful." *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 866, 368 N.E.2d 1230, 1232 (1977) (citation omitted). Two components are critical to the claim. The first essential element is an allegation that the plaintiff suffered a specific and measurable loss. Absent an allegation of special damages, an action sounding in prima facie tort may not be maintained. *Wehringer v. Helmsley-Spear, Inc.*, 91 A.D.2d 585, 586, 457 N.Y.S.2d 78, 80 (1st Dep't 1982) *aff'd*, 59 N.Y.2d 688, 463 N.Y.S.2d 417, 450 N.E.2d 223 (1983). Second, the New York Court of Appeals has held that what makes an otherwise lawful act unlawful is a malicious motive. *Reinforce v. Birney*, 308 N.Y. 164, 169, 124 N.E.2d 104 (1954). More recently New York's Court of Appeals reaffirmed this standard: "[T]here is no recovery in prima facie tort unless malevolence is the *sole* motive for defendant's otherwise lawful act or, in Justice Holmes characteristically colorful language, unless defendant acts from 'disinterested malevolence.' " *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721 (1983)(plaintiff's prima facie tort claim dismissed because while defendant's conduct alleged to be intentional and malicious, plaintiff did not allege a *solely* malicious motive). *See also Rodgers v. Grow-Kiewit Corp.—MK*, 535 F.Supp. 814, 816 (S.D.N.Y. 1982) ("motives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence

---

**1.** After the Court heard oral argument on this motion plaintiff sent a letter to Chambers attempting to change the prima facie tort claim to one for defamation. *See* Letter from Noel Hauser to Judge Platt (April 29, 1986) ("we have mistakenly denominated the count ... as one sounding in 'prima facie tort,' rather than one of defamation.... [T]his mistake is understandable, given the similarity of the two types of claims as they have developed.") Altering the underlying theory of an action after the Pre-Trial Order has been filed and after a motion for summary judgment has been briefed and argued exceeds the liberal amendment dictate of Fed.R. Civ.P. 15(a) and will not be permitted by this Court.

Moreover, the Court is compelled to add that the facts presented in the pleadings and affidavits will not support a defamation claim. The omission of plaintiff's name from the referral list is not libel per se (libel whose import is apparent on the face of the publication itself), but rather is libel per quod (libel not apparent on face of publication—arises only by reference to extrinsic facts). The significant distinction between the two types is that a prima facie case of libel per quod requires pleading and proof of special damages. *See, e.g., El Meson Espanol v. NYM Corp.*, 521 F.2d 737, 740 (2d Cir.1975) (if not libel per se, general allegations of damage insufficient); *Wehringer v. Allen-Stevenson School*, 46 A.D.2d 641, 360 N.Y.S.2d 429 (1st Dep't 1974) (when alleged defamatory material not libelous per se complaint fails to state a claim in absence of special damages). As noted *infra* pp. 623–24, plaintiff has failed to establish special damages.

Finally, truthful publication if proved by the defendant is a complete defense to a defamation claim (often referred to as "justification"). Plaintiff has admitted that he is neither board certified nor board eligible—the two criteria for inclusion on the list. Thus, defendant's omission of his name was justified and not defamatory.

even if mixed with malice or personal animus, bars recovery under prima facie tort.'').

Extrapolating the rationale from the case law recited, this Court concludes that the New York State Courts have confined prima facie tort to extreme cases and have zealously prevented it from becoming a catch-all for assorted tortious conduct. Applying the strict State Court criteria to the case at bar this Court finds that plaintiff has failed to identify his actual losses with sufficient particularity to satisfy the special damage requirement.

Second, and even more glaringly, the unrefuted affidavits of the defendant which set forth the reasons for the new criteria establish that intention to harm the plaintiff was not the *sole* motive for the change. Indeed, when questioned at his deposition whether he had any document which would establish support for his contention that the new criteria was adopted solely to hurt him, the plaintiff replied, "No." Callagy Aff., Ex.F. With both essential elements of the tort lacking, defendant is entitled to judgment as a matter of law.

B. *Intentional Infliction Of Emotional Harm*

■ The elements of this tort are "(1) an extreme and outrageous act by the defendant, (2) an intent on the part of the defendant to cause severe emotional distress, (3) resulting severe emotional distress, (4) caused by defendant's conduct." *Burba v. Rochester Gas and Electric Corp.*, 90 A.D.2d 984, 456 N.Y.S.2d 578, 579 (4th Dep't 1982).

The conduct satisfying the first element of this tort has been described in The Restatement, Torts 2d, § 46, Comment d as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." To say that the defendant's conduct meets The Restatement description cited with approval in *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y. S.2d 991, 992, 373 N.E.2d 1215, 1216 (1978) would be to forsake reality, common sense

and judicial prudence. Second, this Court can find no evidence of defendant's intent to cause plaintiff severe emotional distress by effecting the change in criteria. Nor do we find compelling evidence in the record that plaintiff has suffered extreme emotional distress. Any "[m]inor annoyance and affront to dignity" plaintiff may have experienced "are too trivial to support a tort action." W. Prosser & R. Keeton, *Prosser and Keeton on Torts*, § 12, at 63 (1984). The fourth element of the tort—causation—need not be addressed when, as here, any one of the other elements is lacking.

CONCLUSION

For the reasons stated herein defendants' motion for summary judgment is granted on the two outstanding claims in this action. Submit judgment on notice.

SO ORDERED.