**Richard L. MAYER, Plaintiff,**

v.

**MORGAN STANLEY & CO., INCORPORATED, Defendant.**

**No. 88 Civ. 2816 (RWS).**

United States District Court, S.D. New York.

Dec. 2, 1988.

Matays Hughes & Brown, New York City (Rodney A. Brown, of counsel), for plaintiff.

Nicholas R. Weiskopf, New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") has moved for judgment on the pleadings, Fed.R.Civ.P.

12(c), and summary judgment, Fed.R.Civ.P. 56, dismissing the First Amended Complaint in its entirety. Morgan Stanley also has moved for default judgment, Fed.R.Civ.P. 55, and summary judgment, Fed.R.Civ.P. 56, on its first counterclaim for misappropriation of trade secrets and proprietary materials. Plaintiff Richard L. Mayer ("Mayer") has moved to dismiss Morgan Stanley's second counterclaim for conversion and its third counterclaim for abuse of process for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). Mayer also has moved for an order compelling Morgan Stanley to produce certain documents identified in Mayer's first and second requests for production of documents, Fed.R.Civ.P. 37. As set forth below, the motions will be granted in part and denied in part.

*Prior Proceedings*

Mayer has asserted three causes of action—breach of contract, fraud, and defamation—for which he seeks damages. Morgan Stanley has filed an answer, a general denial, and counterclaims for misappropriation of trade secrets and proprietary information, conversion, and abuse of process and prima facie tort, seeking an injunction and damages. This court has diversity jurisdiction over these claims under 28 U.S.C. § 1332.

This action has been strenuously litigated so far in the discovery process between Mayer, the highly paid former employee, and Morgan Stanley, the investment banking firm that employed him during 1987. Mayer joined Morgan Stanley in March of 1987 as a vice president with responsibility for structuring and executing complicated international monetary transactions—so-called "currency swaps"—in the firm's Tokyo office. In October 1987, Morgan Stanley concluded that Mayer's services were unsatisfactory because of difficulties of an interpersonal nature, and it terminated him before the end of that year. According to Mayer, Morgan Stanley terminated him because he declined to participate in transactions he considered illegal. When Mayer departed the Tokyo premises, he took with him some 2,800 pages of documentation that he asserts are his work product with respect to the transactions with which he was involved. This simple recital of the parties' positions explains the vigor with which they have litigated to date.

The motions were argued and submitted on August 3, 1988.

*Standard for Summary Judgment*

In the summary judgment context, the moving party bears the burden of proving that there exists no genuine issue of material fact, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988), all doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). Except as noted below, the facts are not in dispute.

*The Facts*

Before joining Morgan Stanley, Mayer was a Vice President with Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"), where he specialized in international transactions involving currency swaps, private placements, and loan syndications. For 1986, Merrill Lynch paid him approximately $500,000 to $600,000 in salary and bonuses.

In early November of 1986, Patrick de Saint–Aignan ("de Saint–Aignan"), Managing Director in charge of the currency swap group at Morgan Stanley, invited Mayer to join Morgan Stanley's Tokyo swap group. Over the next couple of months, Mayer interviewed with other Morgan Stanley people from the firm's New York, Japan, and London offices. Following negotiations between Mayer and de Saint–Aignan, de Saint–Aignan sent Mayer a letter, dated January 29, 1987, offering him a position as Vice President with Morgan Stanley. The pertinent paragraph in that letter provided:

Your title will be that of Vice President in the Swap Group in our Tokyo office. Your base salary will be set at an annual rate of $90,000. In addition, you will receive three equal bonus advance payments of $11,250 each paid in April, July and October. We expect your total compensation for 1987 to be in the range of $500,000 to $600,000. The actual number may vary based on your performance, Swap Group and overall Firm results.

Mayer accepted this employment offer and joined Morgan Stanley on March 2, 1987. Two weeks later, Mayer relocated to Japan and began working at Morgan Stanley's Tokyo office. While in Japan, Mayer worked on numerous transactions, developing a reputation as a very able investment banker.

Despite Mayer's technical abilities, Morgan Stanley was dissatisfied with his interpersonal and client communication skills. As a consequence, the firm claims, de Saint–Aignan told Mayer in October of 1987 that Morgan Stanley was terminating him and that it would announce the discharge as a relocation to New York, which it was. According to Mayer, de Saint–Aignan at that meeting proposed to transfer him back to New York, perhaps into the Capital Market Services group—de Saint–Aignan did not tell him the firm was discharging him.

Mayer alleges that Morgan Stanley provided him an office in Tokyo in the Investment Banking Division while he was awaiting reassignment to New York. During this period, he claims, he continued working on product research and development, specifically regarding a negative duration bond. De Saint–Aignan maintains that the firm gave Mayer no responsibilities in either Tokyo or New York after the end of October and that he did not know Mayer's whereabouts after that date. However, de Saint–Aignan concedes that Mayer showed up on occasion in both the Tokyo and New York offices.

When Mayer left the Tokyo office, he had some 2800 pages of documents shipped back to New York. Mayer maintains that these documents represent his work product regarding the transactions he worked on while in Tokyo. Morgan Stanley alleges that most of these documents are proprietary materials containing confidential information regarding the identity of the firm's clients, the identity of parties to non-public transactions, the structure Morgan Stanley employs in complex transactions, important business decisions and strategies, and similar sensitive information. Morgan Stanley has demanded in writing that Mayer return these documents, but Mayer has refused, arguing that he requires the documents to help prosecute his claims in this action.

On January 4, 1987, Stephen W. Baird ("Baird") of Morgan Stanley's New York office sent Mayer a letter informing him that his official date of resignation was December 31, 1987, and that the firm would cease paying him his base salary and benefits as of that date. The letter also advised Mayer that the firm was prorating his bonus over the thirty-four weeks it believed he actually worked with Morgan Stanley—March 2, 1987, until October 31, 1987.

## The Breach of Contract Claim

■ Mayer alleges that he joined Morgan Stanley according to a written contract guaranteeing him total compensation for 1987 of $500,000 to $600,000. Morgan Stanley breached this contract, Mayer contends, by failing to pay him the amount it promised. Morgan Stanley agrees that this contract governed Mayer's employment with the firm but argues that it has complied fully with the contract's terms because the amount it paid Mayer represents $500,000 in salary and bonus prorated for the thirty-four weeks Mayer worked with the firm between March 2 and October 31 of 1987. On this breach of contract claim, summary judgment is granted in favor of Mayer.

De Saint–Aignan's letter of January 29, 1987 set forth the terms of Mayer's employment contract. In that letter, Morgan Stanley promised to pay Mayer "total compensation for 1987 ... in the range of $500,000 to $600,000," with the actual amount varying according to "[Mayer's] performance, Swap Group and overall Firm

results." Where contractual language is plain on its face, it should be so construed as a matter of law in the summary judgment context. *See Sutton v. East River Savings Bank,* 55 N.Y.2d 550, 554–55, 435 N.E.2d 1075, 450 N.Y.S.2d 460 (1982). The contract obliged Morgan Stanley to pay Mayer at least $500,000 for 1987, but left it to the firm's discretion to pay him more than that amount. *See Lezinski v. Roubaix Mills, Inc.,* 210 A.D. 102, 103, 205 N.Y.S. 573 (1st Dept.1924).

The firm cannot reduce Mayer's bonus for the period in early 1987 before he joined the firm. De Saint–Aignan's letter offering Mayer a position with Morgan Stanley promised him "total compensation for 1987" of $500,000 to $600,000. Nothing in that letter indicated that Morgan Stanley planned to reduce this amount to reflect the fact that Mayer would start with the firm in early March. Indeed, the timing of the letter—January 29, 1987—indicated the opposite. If Morgan Stanley intended to pay Mayer at an annual rate of $500,000 to $600,000, it would not have sent him a letter one month into 1987 promising him total compensation for the year of $500,000 to $600,000.

Morgan Stanley contends that it has no obligation to pay Mayer a bonus beyond October 31, 1987, because de Saint–Aignan terminated Mayer during a meeting in Tokyo in the latter part of October. But this contention conflicts with Baird's January 4, 1988, letter informing Mayer that his "official date of resignation" was December 31, 1987. Because Mayer continued with Morgan Stanley until the end of 1987, the firm must honor its contract to pay him "total compensation" for that year of $500,000.

*The Fraud Claim*

Mayer charges Morgan Stanley with fraud, alleging that the firm—through de Saint–Aignan's negotiations and his January 29, 1987, letter—made several misrepresentations upon which Mayer relied to his detriment. These allegedly included misrepresentations that Mayer would become head of the Swap Group in Tokyo, that de Saint–Aignan would make every effort to make Mayer a Principal at the end of 1987,

that the firm had approved every recommendation de Saint–Aignan previously had made for promotion to Principal, that Mayer's compensation for the balance of the year would not be prorated, and that Mayer would receive compensation for 1987 in the range of $500,000 to $600,000. Mayer also maintains that, during the negotiations leading to his employment with Morgan Stanley, he stated—and Morgan Stanley agreed—that he would not participate in any activity he considered illegal. Yet, according to Mayer, the firm fired him for refusing to participate in certain transactions he objected to as illegal. Summary judgment on the fraud claim is awarded in favor of Morgan Stanley.

The nature of the misrepresentations Mayer alleges Morgan Stanley made during its contract negotiations establishes that Mayer's grievance with Morgan Stanley essentially is contractual, not tortious. Under New York law a breach of contract —even an "intentional" or "malicious" breach of contract—does not give rise to a tort action. *See La Fleur v. Montgomery,* 70 A.D.2d 545, 416 N.Y.S.2d 602, 604 (1st Dept.1979); *Charles v. Onondaga Community College,* 69 A.D.2d 144, 418 N.Y. S.2d 718, 721 (4th Dept.), *appeal dismissed,* 48 N.Y.2d 650, 396 N.E.2d 482, 421 N.Y.S.2d 200 (1979); 59 N.Y. Jur. *Torts* § 17 (1968). This principle is not surprising: if it were otherwise, "every breach of contract would constitute a tort, as every breach, if unauthorized, is wrongful." *O'Hagan v. Del Prado,* 53 N.Y.S.2d 845 (Sup.Ct.1945).

Because the alleged fraudulent misrepresentations are just restatements of plaintiff's breach of contract cause of action, they fail to state a separate cause of action for fraud. *See Scally v. Simcona Elec. Corp.,* 135 A.D.2d 1086, 523 N.Y.S.2d 307, 308 (4th Dept.1987); *Trusthouse Forte (Garden City) Mgt., Inc. v. Garden City Hotel, Inc.,* 106 A.D.2d 271, 483 N.Y.S.2d 216, 218 (1st Dept.1984); *Freyne v. Xerox Corp.,* 98 A.D.2d 965, 470 N.Y.S.2d 187, 188 (4th Dept.1983); *Regnell v. Page,* 54 A.D.2d 540, 387 N.Y.S.2d 253 (1st Dept. 1976); *Brignoli v. Balch Hardy and*

*Scheinman, Inc.,* 645 F.Supp. 1201, 1207 (S.D.N.Y.1986).

■ Mayer's allegation that Morgan Stanley defrauded him by assuring him the firm would not require him to engage in illegal transactions and then firing him for purportedly objecting to a transaction he considered unlawful also fails for another reason. Mayer was an at will employee, and New York does not recognize a contract cause of action for wrongful dismissal of an at will employee. *See Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983). Accordingly, Morgan Stanley's right to fire Mayer was unimpaired—the firm could fire him for any reason or for no reason at all. *See Murphy,* 461 N.Y.S.2d at 237, 448 N.E.2d at 91; *Grant v. DCA Food Indus., Inc.,* 124 A.D.2d 909, 508 N.Y.S.2d 327, 328 (3d Dept.1986).

· To allow Mayer to sue Morgan Stanley for fraud because it allegedly terminated him for objecting to a transaction he considered illegal would circumvent the unavailability of a contract remedy for wrongful dismissal. The New York Court of Appeals has expressly prohibited employees from using tort causes of action to get around the unavailability of a contract remedy. *See, e.g., Murphy,* 461 N.Y.S.2d at 232, 448 N.E.2d at 86 (dismissing claims for wrongful dismissal, prima facie tort, and intentional infliction of emotional distress); *see also O'Donnell v. Westchester Community Serv. Council, Inc.,* 96 A.D.2d 885, 466 N.Y.S.2d 41 (2d Dept.1983) (dismissing claim for prima facie tort); *Manley v. Pandick Press, Inc.,* 72 A.D.2d 452, 424 N.Y.S.2d 902, 904 (1st Dept.1980) (dismissing claims for intentional infliction of emotional distress and prima facie tort); *Kersul v. Skulls Angels, Inc.,* 130 Misc.2d 345, 495 N.Y.S.2d 886 (Sup.Ct.1985) (dismissing claims for prima facie tort and intentional infliction of emotional distress).

*The Defamation Claim*

■ Mayer alleges that on or about October 16, 1987, de Saint–Aignan told R. Christian B. Evenson ("Evenson"), a bond salesman for Drexel Burnham Lambert, Inc., in Los Angeles that Morgan Stanley had "fired" Mayer. Mayer also charges that on or about November 12, 1987, he learned from William Broeksmit ("Broeksmit"), a Merrill Lynch Vice President, that Kenneth Wolfe ("Wolfe"), a Morgan Stanley Vice President, told Broeksmit, in or about the first week of October 1987, that Mayer "had lost a lot of money in the trading book" and that "he [Mayer] was on his way out." Mayer contends that Morgan Stanley is liable for defamation because de Saint–Aignan and Wolfe—acting on behalf of Morgan Stanley—made these false statements with the intent to injure his professional reputation. Summary judgment on this defamation claim is granted in favor of Morgan Stanley.

In New York, truth is an absolute defense to any defamation action. *See Pollnow v. Poughkeepsie Newspapers, Inc.,* 67 N.Y.2d 778, 492 N.E.2d 125, 126, 501 N.Y.S.2d 17, 18 (1986); *Rinaldi v. Holt, Rinehart & Winston,* 42 N.Y.2d 369, 366 N.E.2d 1299, 397 N.Y.S.2d 943, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). There is ample evidence supporting the truth of the alleged defamatory statements.

The firm's internal reviews of Mayer's performance establish the truth of the statements that Morgan Stanley "fired" Mayer and that Mayer was "on his way out." An interim evaluation de Saint–Aignan prepared in July of 1987, for example, concluded:

> The first 3 months have been very difficult. It is critical that changes be made, otherwise irreparable damage will have been done. Chances for promotion this year have been reduced.

The fact that Morgan Stanley kept Mayer on the books and was obligated to pay him until the end of 1987 does not make the statements that the firm had decided to fire him prior to that time false.

*The Misappropriation and Conversion Counterclaims*

Morgan Stanley seeks an injunction on its misappropriation and conversion counterclaims to recover the documents Mayer

had shipped to New York when he left the Tokyo office.

■ Summary judgment is granted in favor of Morgan Stanley on the misappropriation counterclaim. Mayer's principal objection to Morgan Stanley's demand that he return the documents involves his concern that he requires the documents to prosecute effectively his claims in this action. Because this decision resolves Mayer's claims, Mayer no longer has any need for the documents. Accordingly, Mayer must return to Morgan Stanley all documents he took with him when he left the firm, including all copies. *See Webcraft Technologies, Inc. v. McCaw*, 674 F.Supp. 1039, 1048 (S.D.N.Y.1987) (Leval, J.). Moreover, Mayer may not distribute the documents or disclose their contents to anyone.

■ Morgan Stanley's conversion counterclaim is dismissed for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). New York law requires a party claiming conversion to plead and prove the value of the property allegedly converted. *See* 23 N.Y.Jur.2d *Conversion* § 82 (1982). Morgan Stanley has failed to plead the value of the documents Mayer took with him when he left the firm.

*Abuse of Process and Prima Facie Tort Counterclaim*

Morgan Stanley charges Mayer with abuse of process and prima facie tort, alleging that Mayer wrongfully is keeping the documents he took with him when he left the firm to help establish his claims in this action and to pressure the firm to pay him the money he wants. Morgan Stanley's abuse of process and prima facie tort counterclaim is dismissed for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

■ To state a claim for abuse of process, Morgan Stanley must allege that Mayer misused this court's process to accomplish some ulterior purpose unrelated to the proper purpose of that process. *Board of Educ. of Farmingdale Union Free School v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975); 1 N.Y. Jur. *Abuse of Process* § 3 (1958). Morgan Stanley asserts that Mayer wrongfully possesses documents and that he plans to use those documents to pressure the firm into paying him money to which he is not entitled. However, Morgan Stanley does not allege that Mayer misused this court's process to obtain those documents—indeed, Morgan Stanley could not allege this because Mayer obtained the documents before he brought this action. The only use of this court's process Mayer has made is to file the complaint, which he did to recover money Morgan Stanley owed him under his employment contract, not for some improper collateral purpose. This is a legitimate use of this court's process, particularly in light of Mayer's success on his breach of contract claim.

■ New York law defines prima facie tort as the intentional infliction of harm, resulting in damage, without excuse or justification, by an act that otherwise would be lawful. *See ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 368 N.E.2d 1230, 1232, 398 N.Y.S.2d 864, 866 (1977). To prevail, a plaintiff also must allege special damages. *See id., Lincoln First Bank v. Siegal*, 60 A.D.2d 270, 400 N.Y.S.2d 627, 633 (4th Dept.1977). Because Morgan Stanley has failed to allege special damages, its prima facie tort counterclaim must be dismissed. *See John C. Supermarket, Inc. v. New York Property Ins. Underwriting Assoc.*, 60 A.D.2d 807, 400 N.Y.S.2d 824, 825 (1st Dept.1978).

*Production of Documents*

Because this decision disposes of this case, Mayer's motion for production of documents pursuant to Rule 37 of the Federal Rules of Civil Procedure is moot.

*Conclusion*

For the reasons set forth above, the motions are granted in part and denied in part. Settle judgment on notice.

It is so ordered.