08-4096-cv
McKenzie v. Dow Jones & Co., Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.  IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)."  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/).  IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of December, two thousand and nine.


Present:   ROSEMARY S. POOLER,
           REENA RAGGI,
                         Circuit Judges,

           EDWARD R. KORMAN,

                         District Judge.[1]

_____

    BRETT McKENZIE,
                         Plaintiff-Appellant,

                  -v-
                                                         08-4096-cv

    DOW JONES & COMPANY, INC.,
                         Defendant-Appellee.

_____

---

[1] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Appearing for Plaintiff-Appellant:        Moshe Mortner, New York, NY.

Appearing for Defendant-Appellee:      Slade R. Metcalf, New York, NY.

Appeal from the United States District Court for the Southern District of New York.

      **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the opinion and order of the said district court is hereby **AFFIRMED.**

      Plaintiff-Appellant Brett McKenzie appeals from the opinion and order, dated July 22, 2008, of the United States District Court for the Southern District of New York (Scheindlin, J.), which granted Defendant-Appellee Dow Jones & Co.'s motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that it was untimely filed under New York Law.

      We assume the parties' familiarity with the relevant facts and procedural history. Brett McKenzie is a resident of New Hampshire and Dow Jones, Inc., which owns and publishes The Wall Street Journal, is headquartered in New York City. On April 27, 2008, the Journal published a column by Dorothy Rabinowitz, a member of the paper's editorial board, concerning litigation arising from sexual abuse committed by Catholic priests in New Hampshire. The column, entitled "A Priest's Story," contains the following passage:

> Nine years after he had been convicted and sent to prison on charges of sexual assault against a teenage boy, Father Gordon MacRae received a letter in July 2003 from Nixon Peabody LLP, a law firm representing the Diocese of Manchester, N.H. . . . .
>
> " . . . an individual named Brett McKenzie has brought a claim against the Diocese of Manchester seeking a financial settlement as a result of alleged conduct by you," the letter informed him. . . .
>
> Fr. MacRae promptly filed a letter off through his lawyer, declaring he had no idea who Mr. McKenzie was, . . . Neither he nor his lawyers ever received any response. Fr. MacRae had little doubt that the stranger – like other who had emerged, long after trial, with allegations and attorneys, and, frequently just-recovered memories of abuse – got his settlement.

      Two days afterward, on Friday, April 29, 2005, The Manchester Union Leader, a New Hampshire newspaper, published an article on Rabinowitz's column. In that article, Rabinowitz was quoted as saying that she wrote the column because "I wanted to illustrate one of the driving forces of miscarriages of justice, and I think . . . that personal injury lawyers are driving many cases . . . that would not have been brought otherwise."

      McKenzie alleges that "[i]n 1983, . . . at age 12, [he] was sexually molested by a Roman

Catholic priest. In 1983, [he] joined a class action against the Roman Catholic Diocese of Manchester, N.H. As a result, [he] entered into a confidential agreement in November 2003 with the Dioceses . . . and . . . received $20,000."

Later in the complaint, McKenzie identifies that priest as Gordon MacRae. Rabinowitz's column, McKenzie alleges, "identified [him] as an individual who had claimed to be sexually abused by a priest for the purpose of extracting a monetary settlement from the Diocese of Manchester." Further, McKenzie avers that "the article revealed for the first time [his] closely guarded secret that as a child he had been sexually abused by a priest." As a result, McKenzie alleges that he "was forced to explain to family, friends, and co-workers what had happened, and was forced to relive a very painful trauma." Accordingly, McKenzie asserts that Rabinowitz's column was "false, defamatory, malicious, and libelous . . . ." McKenzie states a single cause of action, for prima facie tort.

McKenzie filed his complaint in the Southern District, on April 15, 2008, asserting diversity as the basis of jurisdiction, and Dow Jones immediately moved to dismiss. Judge Scheindlin granted the motion on the ground that McKenzie's complaint was untimely under New York law. Observing that McKenzie's claims of injury stemmed from allegations regarding harm to his reputation, Judge Scheindlin concluded "that his prima facie tort claim is no more than a thinly-veiled defamation claim." Thus, the case was governed by New York's one-year statute of limitations for intentional torts, and not by its three-year statute of limitations for prima facie tort. Judge Scheindlin specifically rejected McKenzie's contention "that because he does not allege that the statements in the [Rabinowitz column] are false . . . he [could not] avail himself of traditional tort remedies":

> The [column's] factual statements, however, are not at the heart of McKenzie's claim. Rather, McKenzie takes issue with the allegedly false impression created by the [column] that his claim of sexual abuse by a priest was a fraud perpetrated to extract money. According to McKenzie, the article "gave rise to false suggestions, impressions and implications," conveying to the community that he is "dishonest, disreputable, deceptive and had wrongfully accused a priest for his own financial gain." McKenzie contends that these false implications are "reasonably susceptible of a defamatory connotation" and were known by Dow Jones to be false when the Article was published.

We review the district court's grant of a motion to dismiss under Rule 12(b)(6) de novo. See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008). The parties are in agreement that New York law applies. Under New York law, the statute of limitations for a defamation claim is one year. N.Y. C.P.L.R. § 215(3). Some New York caselaw recognizes the statute of limitations for a claim of prima facie tort as three years. See Barrett v. Huff, 776 N.Y.S.2d 678, 680 (4th Dep't 2004) (citing cases); but see Russek v. Dag Media Inc., 851 N.Y.S.2d 399, 400 (1st Dep't 2008) ("[A] cause of action for prima facie tort is governed by a one-year statute of limitations."). Whatever the statute of limitations for prima facie tort, however, McKenzie's claim still fails. It is well-settled in New York that a plaintiff cannot save

3

an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period.  See Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453, 459 (1967).

New York courts have generally been wary about the over-extension of prima facie tort as a cause of action:

> Although the doctrine of prima facie tort was developed to provide a remedy for injurious intentional conduct that does not fall within the categories of the traditional torts, the concept that the law should never suffer injury and damage without remedy has limitations mandated by public policy.  Thus, prima facie tort is not a "catch-all" alternative for every cause of action that fails to establish the elements of traditional torts.

103 N.Y. Jur.2d, Torts, Section 21 (2009) (footnotes omitted); see also Belsky v. Lowenthal, 405 N.Y.S.2d 62, 65 (1st Dep't 1978) ("Prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs.").  Under New York law, there are four elements to a claim of prima facie tort: "(1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful."  Evergreen Pipeline Constr. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 161 (2d Cir. 1996).

McKenzie's prima facie tort claim cannot stand for at least two reasons.  First, where "[t]he factual allegations underlying [the prima facie tort] cause of action relate to the dissemination of allegedly defamatory materials," that cause of action "must fail."  Butler v. Delaware Otsego Corp., 610 N.Y.S.2d 664, 665 (3rd Dep't 1994); see also Springer v. Viking Press, 457 N.Y.S.2d 246, 248 (1st Dep't 1982) (in case involving allegedly libelous depiction of plaintiff in novel, there was "no warrant for the invocation of the prima facie tort doctrine" where plaintiff could not succeed "without, at the same time, establishing the classical tort of libel").  We agree with the district court that McKenzie's complaint, which repeatedly avails itself of the terminology of defamation, cannot properly be considered to raise a claim of prima facie tort.  See Morrison, 19 N.Y.2d at 458-59 (noting that, "unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished," and that where plaintiff alleges that "defendants' conduct 'brought an idea' that [plaintiff] was dishonest 'to the perception' of the general public ... [plaintiff's] cause of action must be deemed to fall within the ambit of tortious injury which sounds in defamation").

Moreover, it appears that New York courts have been very strict in holding that a cause of action for prima facie tort will not lie unless the actions complained of can be plausibly said to have been motivated solely by malice towards the plaintiff.  In the context of cases involving acts of expression, wherever a defendant's actions can be seen, at least in part, as having been motivated by the desire to express some opinion, a cause of action for prima facie tort will fail.  This is so even if the actions complained of were motivated in part by a desire to injure the plaintiff.  See Belsky v. Lowenthal, 405 N.Y.S.2d at 65 ("liberal application of 'malicious' to the motives" of the defendant will not alone make out a cause of action for prima facie tort).

4

A good example is <u>ATI, Inc. v. Ruder & Finn, Inc.</u>, 42 N.Y.2d 454 (1977), in which the plaintiff, a manufacturer of aerosol products, alleged that a public relations firm, and related entities, generated negative publicity about the effect of these products upon the ozone layer as a means of intimidating the plaintiff into hiring it to produce positive publicity about aerosol products. The New York Court of Appeals held that since the possible harm arising from the use of aerosol products was a bona fide controversy, "that perhaps some defendants were motivated by a desire to harm plaintiff by alerting the public as to the potential hazard does not require a conclusion that these defendants' conduct is without justification. Whatever defendants' motivation . . . [there is] a reasonable basis for concluding that aerosols may damage the environment and this must be deemed a justification which the law will recognize." <u>Id.</u> at 460.

Even assuming arguendo that Rabinowitz was motivated by some desire to harm McKenzie, it is not possible to disregard the fact that her column is aimed at advancing her view that vexatious litigation, especially in claims involving child abuse, is a problem of which the public should take notice. Indeed, McKenzie himself argues that Rabinowitz and Dow Jones "didn't care about the harm they would cause [him], because <u>they had a larger agenda</u>. As Rabinowitz made clear in her statements to <u>The New Hampshire Union Leader</u>, she named McKenzie in order to have a larger chilling effect over the ability of lawyers and judges to fashion confidential settlements in future cases of sexual abuse, because she views confidential settlements as 'the worst encouragement to a false abuse climate.'" <u>See</u> Compl. ¶ 17 (quoting <u>Union Leader</u> article); <u>see also</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007) ("[O]ur review [of a motion to dismiss] is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."). The recognition of another agenda on the part of Rabinowitz and Dow Jones precludes McKenzie's ability to state a cause of action for prima facie tort, and therefore precludes his ability to avail himself of a three-year statute of limitations.

To the extent plaintiff's complaint raises a claim for independent emotional damages, that claim is essentially one for invasion of privacy, a tort that is severely limited in New York and is, in any event, subject to the one-year statute of limitations in CPLR 215(3). <u>See</u> <u>Cohen v. Herbal Concepts, Inc.</u>, 63 N.Y.2d 379, 383 (1984) ("Although the tort has assumed various forms in other jurisdictions, in New York privacy claims are founded solely upon sections 50 and 51 of the Civil Rights Law." (citation omitted)); <u>Farrow v. Allstate Ins. Co.</u>, 862 N.Y.S.2d 92, 93 (2d Dep't 2008) ("New York State does not recognize the common-law tort of invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51."); <u>see also</u> CPLR 215(3) ("The following actions shall be commenced within one year: . . . a violation of the right of privacy under section fifty-one of the civil rights law."); N.Y. Civil Rights L. § 51 (providing cause of action for act "declared to be unlawful by section fifty of this article"). Plaintiff may not plead this time-barred claim as a prima facie tort to avoid the one year statute of limitations. <u>See</u> <u>Havell v. Islam</u>, 739 N.Y.S.2d 371, 372 (1st Dep't 2002).

Finally, we see no reason not to affirm the district court's holding that granting McKenzie leave to amend would be futile.

For the reasons stated above, the opinion and order of the district court is hereby

5

AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk
By:

_____