LISA SPRINGER, Respondent-Appellant, v VIKING PRESS et al., Appellants-Respondents.

First Department, December 14, 1982

APPEARANCES OF COUNSEL

*Martin Garbus* of counsel (*Frankfurt, Garbus, Klein & Selz, P. C.,* attorneys), for appellants-respondents.

*Myles C. Cunningham* of counsel (*Post, DeMott & Cunningham,* attorneys), for respondent-appellant.

BLOOM, J.

This appeal presents us with the issue of whether a fictional depiction of a person contained in a single chapter of a novel is so closely related to plaintiff in the minds of people to whom she is known as to give rise to a cause of action in defamation.

Plaintiff and defendant Tine, the author of the novel in question, attended Columbia University from 1974 to 1978. They met and a close personal relationship developed. In 1978 Tine completed the draft of "State of Grace" a novel dealing with Vatican finances and politics. Plaintiff and Tine discussed the plot during the volume's hatching stage and plaintiff, at Tine's request, reviewed the book for editorial purposes. Indeed, Tine informed plaintiff that he had loosely patterned the relationship between the hero, the papal private secretary, and the heroine, an investigative reporter and the daughter of one of Italy's most influential and powerful industrialists, on the relationship between them.

Plaintiff and Tine terminated their friendship in 1978, apparently with some rancor. In 1980 "State of Grace" was published by defendant, The Viking Press. Chapter 10 of the book, which covers some 10 and one-half pages, depicts the origin of and one evening in the relationship between the Italian industrialist, described as "the cossack of Italian business, ruthless and demanding", and his mistress, Lisa Blake. Although brief, the chapter is most explicit about their sexual exploits. Based on some physical similarities between Lisa Blake and plaintiff and their common first name, plaintiff contends that the portrayal of Blake is actually a portrayal of her; and that a number of persons who knew both Tine and her, and of the relationship between them, knew and understood Blake and plaintiff to be one and the same person. Accordingly, she asserts that the depiction of Blake as a "whore" who engages in various types of abnormal sexual activity is defamatory of her. By consequence, she has brought this action to recover for the alleged libel.

The complaint contains seven causes of action. The first two causes are in libel; the third, which is actually in

prima facie tort although the phrase is not invoked, alleges that defendants were motivated by malice and ill will and intended to injure plaintiff in her livelihood and seeks treble damages; the fourth cause is bottomed in prima facie tort and seeks punitive damages; the fifth cause asserts an invasion of privacy under the Civil Rights Law; the sixth cause seeks exemplary damages, while the seventh seeks to recover counsel fees. Defendants moved to dismiss the complaint. Plaintiff cross-moved for summary judgment on the issue of liability. Special Term granted the defendant's motion to the extent of dismissing the third, fourth, fifth and sixth causes of action. It denied plaintiff's cross motion for summary judgment. Both sides appeal from that determination.

We deal first with the causes dismissed by Special Term. The third cause seeks treble damages for the malicious conduct of defendants which allegedly resulted in injury to plaintiff. While it is true that, in a proper case, exemplary damages may be awarded as punishment by reason of the aggravated nature of a wrongful act, to prevent repetition by serving as a warning to others and to protect the public (14 NY Jur [rev ed], Damages, § 176), multiple or treble damages are not allowable in the absence of a statute (14 NY Jur [rev ed], Damages, § 191). No such statute is here involved. As to the gravamen of the cause, it and the fourth cause of action purport to allege a prima facie tort. These two causes are insufficient in law. The concept of prima facie tort finds origin in the principle enunciated by Mr. Justice HOLMES in *Aikens v Wisconsin* (195 US 194, 204) that: "the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law * * * requires a justification if the defendant is to escape". We have accorded recognition to the principle (*ATI, Inc. v Ruder & Finn,* 42 NY2d 454; *Advance Music Corp. v American Tobacco Co.,* 296 NY 79). Initially, it was held that such an action would not lie where a claim based upon a traditional tort would afford complete relief (*Morrison v National Broadcasting Co.,* 19 NY2d 453; *Ruza v Ruza,* 286 App Div 767). However, the rule has since been somewhat relaxed (*Board of Educ. v Farmingdale Classroom Teachers Assn. Local 1889, AFT*

*AFL-CIO,* 38 NY2d 397). Where, however, complete relief can be accorded under classical tort concepts, prima facie tort may not be pleaded side by side with the pleading of a conventional tort (*Belsky v Lowenthal,* 62 AD2d 319). Here, there is no claim that complete relief cannot be afforded by application of traditional tort remedies. Moreover, the prima facie tort cannot be established without, at the same time, establishing the classical tort of libel. There is, therefore, no warrant for invocation of the prima facie tort doctrine and the third and fourth causes were properly dismissed.

█ The fifth cause purports to allege a violation of sections 50 and 51 of the Civil Rights Law. Section 50 makes it a misdemeanor to use, for purposes of trade or advertising, "the name, portrait or picture of any living person without having first obtained the written consent of such person". Section 51 accords to the person whose name, portrait or picture is so used the right to sue for an injunction to restrain such use and to recover damages, including exemplary damages. Whatever may be the rule elsewhere, in this State there is no right of action for invasion of privacy independently of statute (*Arrington v New York Times Co.,* 55 NY2d 433; *Wojtowicz v Delacorte Press,* 43 NY2d 858; *Flores v Mosler Safe Co.,* 7 NY2d 276; *Matter of Dora P.,* 68 AD2d 719, 730, n 2; *Kiss v County of Putnam,* 59 AD2d 773; *Meeropol v Nizer,* 560 F2d 1061). Since "State of Grace" does not use plaintiff's name, portrait or picture, no cause of action under the Civil Rights Law exists.

As to the sixth cause of action, it is unnecessary to do more than point out that a claim for punitive damages cannot stand as a separate cause of action. If the right exists at all it exists merely as "an element of the single total claim for damages on the underlying causes of action" (*APS Food Systems v Ward Foods,* 70 AD2d 483, 488; see, also, *Ferrucci v State of New York,* 42 AD2d 359; *Gill v Montgomery Ward & Co.,* 284 App Div 36).

We come then to the defamation causes which were sustained by Special Term. We begin by noting that "[i]t is for the court to decide whether a publication is capable of the meaning ascribed to it" (*Julian v American Business*

*Consultants,* 2 NY2d 1, 14; see, also, *Drug Research Corp. v Curtis Pub. Co.,* 7 NY2d 435; *Allen v Gordon,* 86 AD2d 514; *Lyons v New Amer. Lib.,* 78 AD2d 723). Where, as here, the work claimed to be defamatory is fictional, the court's task necessarily entails a search for similarities and dissimilarities so as to determine whether a person who knew plaintiff and who has read the book could reasonably conclude that plaintiff was Lisa Blake. Plaintiff asserts that her physical attributes and those of Blake are similar. Like plaintiff, Blake had graduated from college. Additionally, the book indicates that Blake had once lived on 114th Street, a street on which plaintiff lived and still lives. However, plaintiff is a tutor on the college level while Blake, described as a "whore" held the "title deed for a co-op apartment in the Olympic Tower on Fifth Avenue", which was well-furnished but not overbearing, receiving a "salary" of $75,000 and who drove a BMW. Blake lived luxuriously. There is no indication of plaintiff's manner of living except as it can be inferred from the nature of her work.

While the similarities adverted to are in large part superficial, the dissimilarities both in manner of living and in outlook are so profound that it is virtually impossible to see how one who has read the book and who knew Lisa Springer could attribute to Springer the life-style of Blake.

In *Allen v Gordon* (86 AD2d 514, *supra*), defendant was the author of a book entitled "I'm Dancing As Fast As I Can" which set forth the serious physical and emotional difficulties encountered by her as the result of the excessive prescription by her psychiatrist of the drug Valium. In her book she gave the psychiatrist the fictitious name of Dr. Allen. In fact, there was only one psychiatrist named Allen in the Manhattan phone book. That Allen sued for defamation. We held that the dissimilarities between the Dr. Allen named in the book and the plaintiff were such as to negate any suggestion that he was the person indicated. In *Giaimo v Literary Guild* (79 AD2d 917), an actual photograph of plaintiffs was used to illustrate an advertisement for the book "Crazy Love". We there held that: " 'Where the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as

to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining' (34 NY Jur Libel and Slander, § 55)". The advertising brochure made plain that the author was writing of her own marriage. Since her name and picture appeared in the advertisement it was plain that no cause of action had been made out.

In *Lyons v New Amer. Lib.* (78 AD2d 723) the defendants were the publishers and authors of a fictional version of the detailed and sometimes frustrating search by the New York City Police Department to discover and ultimately apprehend the random killer who was commonly referred to as "Son of Sam". During a conversation among several New York City police officers engaged in the investigation, defamatory reference was made to the incompetence of a Sheriff headquartered in Malone, New York. Plaintiff was the Sheriff of Franklin County and maintained his office in Malone, New York. He brought suit to recover for libel. In dismissing the action the court noted: "The work clearly states that it is fiction and that, combined with plaintiff's admission that he did not participate in the Son of Sam investigation, requires the conclusion that the passage is not actionable" (p 724).

The teaching of these cases is that for a defamatory statement or statements made about a character in a fictional work to be actionable the description of the fictional character must be so closely akin to the real person claiming to be defamed that a reader of the book, knowing the real person, would have no difficulty linking the two. Superficial similarities are insufficient as is a common first name. In the circumstances here presented we cannot say that chapter 10 of "State of Grace" is susceptible of the interpretation ascribed to it by plaintiff. Accordingly, we hold that the first two causes of action must be dismissed.

There remains the seventh cause of action which seeks counsel fees. Although no one has addressed that cause we conclude that, since the complaint does not state any viable substantive cause, it cannot stand.

Accordingly, the order of the Supreme Court, New York County (PRICE, J.), entered September 24, 1981, is modified

on the law to dismiss the first, second and seventh causes of action and, except as so modified, is affirmed without costs.

KUPFERMAN, J. P. (dissenting in part). I dissent and would affirm. The majority opinion fairly states the facts, although it omits and glosses over items of similarity which would indicate that the character portrayed in the defendants' novel refers to the plaintiff.

It cannot be determined, as a matter of law (cf. *Carlucci v Poughkeepsie Newspapers,* 57 NY2d 883) that the writing is not "of and concerning" the plaintiff.

The court accepts the fact that the defendant author contemplated including the plaintiff in his book, although the portrayal would have been of a more appealing character. There can be no question but that the portrayal in the book is defamatory, and the only issue is identification. The dissimilarities which the court stresses, "both in manner of living and in outlook", are the very basis for the allegations of defamation. To accept them as leading to the conclusion that there is no connection is the essence of a bootstrap operation.

The record contains a letter from a former lecturer and teacher at Columbia University who had known both the plaintiff and the author defendant, which has the following paragraph:

"I have read Robbie's book and am absolutely amazed that *he has put Lisa into it — under her own name! — as a psychology student who has become a high-class prostitute.* What a childish revenge! She is described making torridly clinical 'love' to an Italian tycoon-gangster who connives to have the pope killed...I wonder if L. [Lisa] has read it??" (emphasis added).

MARKEWICH, SILVERMAN and MILONAS, JJ., concur with BLOOM, J.; KUPFERMAN, J. P., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on September 24, 1981, modified, on the law, to dismiss the first, second and seventh causes of action and, except as so modified, affirmed, without costs and without disbursements.