John R. STANLEY, Plaintiff,

v.

BRAY TERMINALS, INC.; Dana S. Bray, Jr.; Bray Industries, Inc.; Petroleum Action, Inc.; CNG Transmission Corporation; New York State Department of Taxation and Finance; John Doe; and Mary Roe, Defendants.

No. 97–CV–1485 LEK/RWS.

United States District Court, N.D. New York.

Oct. 30, 2000.

226

Neil L. Levine, Whiteman, Osterman Law Firm, Albany, NY, for John R. Stanley.

Richard L. Weisz, Hodgson, Russ Law Firm, Albany, NY, Loren N. Brown, Snyder, Kiley Law Firm, Saratoga Springs, NY, for Bray Terminals, Inc. and Petroleum Action, Inc.

George Szary, DeGraff, Foy Law Firm, Albany, NY, for Dana S. Bray, Jr.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Plaintiff's motion to dismiss Defendants' counterclaims or, in the alternative, for severance dated March 12, 1998. For the reasons set forth below, Plaintiff's motion to dismiss is GRANTED in part and DENIED in part. Additionally, Plaintiff's motion for severance is DENIED.

## I. BACKGROUND

The procedural posture of the current motion is a direct result of this Court's prior rulings and orders. Because these prior rulings and orders detail the specifics of how this motion currently sits before the Court more than two and one half years after it was initially filed, they will not be addressed here.

This foreclosure action, commenced in October 1997, involves real and personal property located in Rennselaer, Clinton, and Oneida counties. In 1993, defendant Bray Terminals ("Terminals") mortgaged property located in Oneida and Rennselaer Counties to secure already existing indebtedness from the First National Bank of Glens Falls (the "Bank"). Later that year, Plaintiff's corporation and Terminals executed a "Through–Put" Agreement ("Agreement") that allowed Plaintiff's corporation to utilize all of Terminals' gasoline storage capacity.

Terminals alleges that Plaintiff made assurances that his corporation would use significant amounts of the storage space set aside in the Agreement even though he was not required to use such space under the Agreement's express terms. According to Terminals, the increased revenue from this storage would allow it to make its mortgage payments. However, Plaintiff's corporation did not use enough of Terminals' storage space for it to satisfy its mortgage payments.

Consequently, Terminals fell behind in its mortgage payments and executed two promissory notes totaling $3.5 million to the Bank in order to re-secure its mortgage. In an attempt to refinance the existing debt on better terms to all parties, Plaintiff and defendant Bray executed a contract ("Refinance Contract") whereby Plaintiff agreed to purchase all of Terminals' then existing debt to the Bank. Defendant Bray alleges that, during the negotiations to this contract, Plaintiff repeatedly assured him that Plaintiff's corporation would utilize the storage space allocated to it under the Agreement so Terminals would have sufficient revenue to make payments on any restructuring of its debt.

As additional collateral, in December 1994, Terminals executed two supplemental mortgages to Plaintiff imposing liens on premises located in Plattsburgh and East Greenbush, New York. Pursuant to the Refinance Contract, the Bank assigned the mortgages and notes to Plaintiff on December 23, 1994. Over the next three years, Plaintiff's corporation did not utilize the storage capacity provided to it under the Agreement. As a result, according to Defendants, they could not meet their underlying obligations on the debt they owed Plaintiff and were forced to default.

In a letter dated September 9, 1997, Plaintiff advised Terminals that it was in arrears on payments owed on the promissory notes and that he was exercising his right to declare the unpaid balance immediately due. Terminals failed to provide payment and Plaintiff commenced this foreclosure action on both the primary mortgages and supplemental mortgages. Defendant Bray and Terminals asserted identical counterclaims against Plaintiff based on his failure to utilize storage capacity provided under the Agreement. Plaintiff has moved to dismiss these counterclaims.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can be granted," must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency of a pleading, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991), and all reasonable inferences must be construed in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988) (applying the principle of construing inferences in favor of plaintiff). As this Circuit has stated, when determining the merits of a motion to dismiss,

> consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that the defendant be given "fair notice of what the ... claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (applying this standard to a complaint based upon civil rights statutes).

### B. Fraudulent Inducement and Fraud Counterclaims

#### 1. Pleading Requirements of Rule 9(b)

■ The Federal Rules of Civil Procedure require that "the circumstances constituting fraud ... be stated with particularity. Mal-

ice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P 9(b). To meet its burden of pleading a claim of fraud, the complaint must adequately specify the misleading or fraudulent statements the claimant alleges it relied upon as well as the location, time frame, and identity of those responsible for making the statements. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

■ However, the requisite intent of the alleged perpetrator of the fraud need not be alleged with great specificity as a plaintiff cannot be expected to plead a defendant's actual state of mind. *See Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2000). The Court may infer scienter when the facts alleged show that the claimant possessed a motive to defraud the opposing party and had a clear opportunity to do so. *See Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir. 1985).

■ Under these standards, the complaint meets the requirements of Rule 9(b). First, the underlying allegations of actual fraud are pled with specificity. The Plaintiff is identified as the speaker. He allegedly misrepresented that his corporation would ship product in sufficient quantity that would enable Defendants to meet their mortgage payments. He made these statements during the negotiations to both the Agreement and the Refinance Contract and at the location of these negotiations.

Finally, given the possibility, as Defendants allege, that Plaintiff made these statements as part of a plan to defraud Defendants of their property, they have met the scienter requirement of Rule 9(b). Consequently, this Court will not dismiss Defendants' counterclaims for fraud and fraud in the inducement for failure to comply with the pleading requirements of Rule 9(b).

### 2. *Merits of Fraudulent Inducement and Fraud Counterclaims*

■ In order to prevail on a claim of fraud or fraudulent inducement, Defendants must establish that Plaintiff (1) misrepresented a material fact; (2) with scienter; (3) that Defendants justifiably relied upon; (4) suffering injury. *See Held v. Kaufman,* 91 N.Y.2d 425, 431, 671 N.Y.S.2d 429, 694 N.E.2d 430 (1998); *Cetnar v. Kinowski,* 263 A.D.2d 842, 843–44, 693 N.Y.S.2d 730 (3d Dep't 1999); *Rosario–Suarz v. Wormuth Bros. Foundry,* 233 A.D.2d 575, 578, 649 N.Y.S.2d 225 (1996); *Young v. Keith,* 112 A.D.2d 625, 626, 492 N.Y.S.2d 489 (1985). When a party alleges that it was fraudulently induced to enter into an agreement that contains a general merger clause, a court can examine evidence outside the four corners of the contract to determine if the allegation has merit. *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959); *Citibank v. Plapinger,* 66 N.Y.2d 90, 95, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985). Conversely, when a party alleges that it was fraudulently induced to enter into an agreement that contains specific language disclaiming reliance on any oral representations, the parol evidence rule will bar a showing of fraud either in the inducement or in the execution of the agreement. *See Danann,* 5 N.Y.2d at 320, 184 N.Y.S.2d 599, 157 N.E.2d 597.

The rationale behind this well-settled rule is that it is unfair to permit a party to claim fraudulent inducement after it plainly and deliberately announces that it is not relying on these representations when signing the contract. *See Plapinger,* 66 N.Y.2d at 95, 495 N.Y.S.2d 309, 485 N.E.2d 974. In effect, if the rule was otherwise, a party claiming fraud could benefit from its own deliberate misrepresentation when placing its signature on a specific merger clause. *See id.* Consequently, this Court must first determine if the merger clause is, as Defendants allege, general, or as Plaintiff alleges, specific.

■ The entire text of the merger clause contained in the Agreement consists of one sentence consisting of nothing more than general boiler plate language. It simply states, "This Agreement, including all attachments, or amendments embodies the whole Agreement of the parties." It is not, like the courts in *Danann* found, an explicit disclaimer of reliance upon oral representations, nor is the substance of the disclaimer compre-

hensive enough, as found in *Plapinger*, to preclude Defendants' fraud or fraudulent inducement counterclaims as a matter of law.

■ Because it is so general, this Court is allowed to examine the extrinsic evidence Defendants have proffered in order to determine if their counterclaims of fraud and fraudulent inducement have merit. Specifically, Defendants' allegations, which this Court must accept as true in a motion to dismiss, indicate that they granted Plaintiff the current interest in their existing facilities only after Plaintiff expressly stated, at the time the parties negotiated transfer of this interest, that he would deliver enough product to ensure that Defendants could meet their financial obligations to him.[1] If Defendants prove that Plaintiff deliberately misrepresented his intentions when making this statement in order to gain an interest in Defendants' facilities and the leverage to force this interest into ownership, they will succeed on their counterclaims for fraud and fraudulent inducement. Therefore, this Court declines to dismiss Defendants' counterclaims for fraud and fraudulent inducement (Counterclaims 1 and 2) at this stage of the proceedings.

**C. Defendants' Breach of Contract and Tortuous Interference with a Contract Counterclaims**

Defendants' third and fourth counterclaims allege that Plaintiff, through his alter-ego corporation, either breached or tortuously interfered with the Agreement because he did not deliver gasoline products as required under the Agreement. To determine whether this Court may grant relief upon either of these two counterclaims, the scope of the Agreement's duties and obligations must be

ascertained. If they are not ambiguous and do not require Plaintiff to utilize Terminals' storage capacity, Plaintiff will not have breached or tortuously interfered with the contract and both counterclaims will fail.

■ Under New York law, a written instrument is ambiguous as a matter of law when on the face of the writing and within its four corners and without resort to extrinsic evidence, it is reasonably susceptible to more than one interpretation. *See Van Wagner Advertising Corp. v. S & M Enterprises,* 67 N.Y.2d 186, 191, 501 N.Y.S.2d 628, 492 N.E.2d 756 (1986); *Roemer and Featherstonhaugh P.C. v. Featherstonhaugh* 710 N.Y.S.2d 190, 191 (3d Dep't 2000) In deciding whether a contract is ambiguous as a matter of law, the court is required to

> examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of the words should be sought.

*Kass v. Kass,* 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998) (quoting *William C, Atwater & Co. v, Panama R. Co.,* 246 N.Y. 519, 524, 159 N.E. 418 (1927)).

■ Applying these principles to the instant case indicates that the Agreement is not ambiguous. It expressly states that Plaintiff's utilization of Terminals' storage space is "to be used at Customer's option." Only if the minimum amount of product delivery called for under the Agreement is ex-

---

1. This alleged promise to deliver product is exactly the type of misrepresentation of a present state of affairs that courts have stated may form the basis for a claim of fraud or fraudulent inducement. *See R. Freedman & Son, Inc. v. A.I. Credit Corp.,* 226 A.D.2d 1002, 1003, 641 N.Y.S.2d 429 (3d Dep't 1996) (stating that a promise to deliver a crane, when made with no intention to deliver, asserted during the negotiations to a contract may form the basis for a fraud charge). Accordingly, Plaintiff's assertion that the fraud charges at issue here do not relate to a present state of affairs and may only be styled as a breach of contract claim are not applicable.

Defendants' silence and acceptance of payments between the time it signed the Agreement and institution of this suit also do not negate its counterclaims for fraud and fraudulent inducement. Finally, because Defendants' counterclaims allege that the Refinance Contract was signed only because Plaintiff fraudulently induced Terminals into signing it, the Statute of Frauds does not apply to bar these counterclaims. *See Chimart Associates v. Paul,* 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986); *Brandwein v. Provident Mutual Life Ins. Co.,* 3 N.Y.2d 491, 496, 168 N.Y.S.2d 964, 146 N.E.2d 693 (1957).

ceeded does Terminals receive additional compensation. Consequently, it was within Plaintiff's rights to refuse to deliver any product beyond the minimum called for in the Agreement to Defendants. Moreover, although this Court is allowed to examine parole evidence to determine whether Defendants' counterclaims of fraud or fraudulent inducement have merit, basic contract law principles dictate that it cannot utilize this evidence to contradict the express terms of an unambiguous contract. *See Trustco Bank of N.Y. v. Drake*, 195 A.D.2d 665, 666, 599 N.Y.S.2d 763 (3d Dep't 1993) (quoting *Chemical Bank v. Kaufman*, 142 A.D.2d 526, 530 N.Y.S.2d 582 (1st Dep't 1988)). Defendants' counterclaims for breach of contract and tortuous interference (Counterclaims 3 and 4) therefore have no merit and are dismissed.

## D. Defendants' Prima Facie Tort Counterclaim

■ A prima facie tort occurs when an individual inflicts intentional harm, resulting in damages, without excuse or justification by an act or series of acts which would otherwise be lawful. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984); *ATI, Inc. v. Ruder & Finn*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977). Usually, a party may not invoke a claim for prima facie tort when relief may be afforded under traditional tort concepts. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985). However, when a traditional tort remedy exists, a party is not necessarily foreclosed from pleading a cause of action for prima facie tort as an alternative grounds for relief. *See id.*

Instead, the crux of the matter is whether the traditional tort remedy can afford claimant complete relief to satisfy his injuries. *See Springer v. Viking Press*, 90 A.D.2d 315, 316, 457 N.Y.S.2d 246 (1st Dep't 1982). If a traditional tort remedy can provide such relief and the prima facie tort cannot be established without at the same time establishing a classical tort, the Court must dismiss Defendants' counterclaim for prima facie tort. *See id.* The purpose of this rule is to prevent the possibility the cause of action for prima facie tort becomes "a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Freihofer*, 65 N.Y.2d at 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (quoting *Belsky v. Lowenthal*, 62 A.D.2d 319, 323, 405 N.Y.S.2d 62 (1st Dep't 1978)).

■ Applying these principals to the instant motion reveals that Defendants' have not asserted a claim for infliction of a prima facie tort upon which relief can be granted. First, their prima facie tort counterclaim is in essence one for fraud or fraudulent inducement. As such, if they prevail on either of these two counterclaims, they will be entitled to full compensation for any injury suffered. Second, as the standard for fraud and fraudulent inducement is in many ways lower than the standard for prima facie tort, Defendants will not be able to prove their prima facie tort counterclaim without also proving fraud or fraudulent inducement. Consequently, this Court concludes that Defendants are not entitled to relief on their prima facie tort counterclaim (Counterclaim 5) and dismisses it.

## E. Standard for Severance of Counterclaims

■ Under the Federal Rules of Civil Procedure, this Court may, at its discretion, sever Defendants' counterclaims from the underlying case in chief. *See* Fed.R.Civ.P. 21; Fed.R.Civ.P. 42(b). The decision to sever counterclaims and bifurcate a trial rests firmly within the discretion of the trial court. *See Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (1990). When deciding whether to sever a counterclaim, courts generally consider whether the issues sought to be tried separately are (1) significantly different from one another; (2) triable by jury or the court; (3) have a different discovery posture; (4) require the testimony of different witnesses and documentary proof; and (5) whether prejudice will result if severance is not granted. *See German and German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y.1995).

■ At this point, severing Defendants' counterclaims from Plaintiff's claim would

neither serve the interests of justice nor prompt the efficient resolution of this litigation. There are numerous questions of fact and law common to Plaintiff's claim against Defendants and Defendants' counterclaims against Plaintiff. For example, at trial Plaintiffs will have to prove that the underlying mortgages at issue in this dispute are enforceable. Defendants will counter any such assertion by providing evidence that Plaintiff procured these mortgages via fraud.

To require Defendants to prove that the mortgages are unenforceable at two separate trials is repetitious, prolongs this already lengthy dispute, and places an unnecessary burden on Defendants. It also poses a problem of inconsistent judgments. Moreover, this Court can limit the minimal possibility of any prejudice to Plaintiff that might inhere in a joint trial by carefully instructing the jury. For these reasons, Plaintiff's motion for severance is denied.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff's motion to dismiss counterclaims 1 and 2 is DENIED; and it is further

ORDERED that Plaintiff's motion to dismiss counterclaims 3–5 is GRANTED; and it is further

ORDERED that Plaintiff's motion for severance is DENIED; and it is further

ORDERED that the Clerk shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.