OPINION OF THE COURT
Richard F. Braun, J.
Plaintiff raises five causes of action in her second amended verified complaint: three for libel, one pursuant to Civil Rights Law § 77, and a fifth solely for punitive damages. Defendants move for summary judgment dismissing the second amended complaint.
In 1996, defendant Random House, Inc. published a book entitled “Primary Colors,” with the subtitle “A Novel of Politics.” The stated name of the author was “Anonymous.” The anonymity of the author of this best seller led to great speculation as to who had written the book. Defendant Joseph Klein eventually disclosed that he was the author. The book was about a character named Governor Jack Stanton, who was from a southern state and running for United States President. The book was widely believed to be based on the first presidential primary campaign of President Bill Clinton in 1991-1992, and defendant Joe Klein admitted that it was.
Plaintiff claims that some people whom she knows who have read the book believe that one of the characters in the book was based on her, which has caused damage to her reputation. On the second page of the book, Governor Stanton goes to a library in Harlem where there is a librarian who misses a step on the stairs, and Governor Stanton reaches out to help her. The character’s name is Ms. Baum. She runs an adult literacy program at the library and is on the regional board of the teachers’ union. Soon after, there is a scene in the book where Governor Stanton and Ms. Baum are coming out of the bedroom in his hotel suite. Governor Stanton is buttoning his open shirt. Ms. Baum is “arranging herself,” and described as seeming “a bit dazed” and trying “to maintain the appearance of propriety.” Ms. Baum is a minor character who only appears in nine pages of the book.
In real life, President Clinton made a campaign appearance at a library in Harlem where plaintiff worked. She was not a librarian like Ms. Baum, but rather a site advisor. Unlike Ms. Baum, plaintiff did not run an adult literacy program and was not on the regional board of the teachers’ union. She had some *1013 similarities to the minimal physical description of Ms. Baum in the book. Plaintiff, defendants, and President Clinton all agreed on a prior motion before this court that plaintiff and President Clinton never had any intimate relationship (see Carter-Clark v Random House, Inc., 2002 NY Slip Op 50464[U], *2).
One of the staples of our free society is that one must be able to speak and publish freely. That is recognized by the First Amendment of the United States Constitution and New York Constitution, article I, § 8. However, the tort of libel bars “the publication of a statement about an individual that is both false and defamatory.” (Brian v Richardson, 87 NY2d 46, 51 [1995].) Such a claim must be based “on published assertions of fact.” (Id. [citations omitted].) Where a work of fiction contains the alleged defamatory statement, to be tortious it must be “of and concerning [the] plaintiff.” (See Springer v Viking Press, 60 NY2d 916, 917 [1983]; Julian v America Bus. Consultants, 2 NY2d 1, 14 [1956].) It is for the court to determine whether the character in a fictional work refers to the plaintiff in a defamation action (see Springer, 60 NY2d at 917; Allen v Gordon, 86 AD2d 514, 515 [1st Dept 1982], affd for reasons stated below 56 NY2d 780 [1982]), whether particular words constitute defamation (Aronson v Wiersma, 65 NY2d 592, 593 [1985]), and whether there are such similarities between the character and the plaintiff that would lead a person who knows the plaintiff and reads the book to reasonably conclude that the plaintiff was the fictional character upon whom the defamation claim is based (Springer v Viking Press, 90 AD2d 315, 319 [1st Dept 1982], affd 60 NY2d 916 [1983]). Summary judgment should be granted, where appropriate, to defendants in libel actions in order to prevent harassment and coercion in the open arena of ideas, and to end meritless libel actions as early as possible in order to limit the waste of resources of both the defendants and the courts (see Immuno A.G. v Moor-Jankowski, 145 AD2d 114, 128 [1st Dept 1989], affd 74 NY2d 548 [1989], rearg denied 75 NY2d 866 [1990], judgment vacated and remanded 497 US 1021 [1990], on remand 77 NY2d 235 [1991], cert denied 500 US 954 [1991]).
A party moving for summary judgment must demonstrate his, her, or its entitlement thereto as a matter of law, pursuant to CPLR 3212 (b) (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]; Jee v New York Post Co., 260 AD2d 215 [1st Dept 1999]). To defeat summary judgment, the party opposing the motion must show that there is a question(s) of *1014 fact that requires a trial (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Plaintiffs first, second, and fourth causes of action are for defamation. The fourth alleges that defendants acted negligently and grossly irresponsibly in not adequately investigating and determining whether the character of Ms. Baum was recognizable as plaintiff, and whether the conduct allegedly imputed to plaintiff through the Baum character was false.
An author of a book of fiction should not be held to the same investigatory standards as a writer of a nonfiction. Although fiction writers often ground their works in part on people and experiences from their own lives, the essence of what they write is by definition fictional.
Though not necessarily determinative, “Primary Colors” styled itself as a work of fiction. So says its subtitle. The author’s note contained in the book states: “Several well-known people — journalists, mostly — make cameo appearances in these pages, but this is a work of fiction and the usual rules apply. None of the other characters are real. None of these events ever happened.” The rear inside jacket flap in part asserts: “This story spans the novelistic spectrum from bedroom farce to high moral drama, and it paints a picture of the political state of the nation so vivid and authentic that one finds in it the deepest kind of truth — the kind of truth that only fiction can tell.”
For a depiction of a fictional character to constitute actionable defamation, “the description of the fictional character must be so closely akin to the real person claiming to be defamed that a reader of the book, knowing the real person, would have no difficulty linking the two. Superficial similarities are insufficient * * (Springer, 90 AD2d at 320.) Like in Springer, the similarities between plaintiff and Ms. Baum were inadequate for a reader, even one who knows plaintiff, to reasonably believe that the characterization of Ms. Baum in “Primary Colors” was “of and concerning” plaintiff (Springer, 60 NY2d at 917).
In Springer, the minor character in the book at issue had the same first name as the plaintiff there, and similar height, weight, build, grooming habits, and recreational habits as she had, but the Court of Appeals held that, as a matter of law, the similarities between the character and the plaintiff were insufficient to constitute libel. (Id.) Here, the similarities between plaintiff and Ms. Baum were much less that those in Springer. The names of plaintiff and Ms. Baum are different, and the *1015 very sketchy physical characterization of Ms. Baum was not so similar to plaintiff as to allow a reader to reasonably conclude that Ms. Baum was based on plaintiff. Furthermore, plaintiff’s library job was different from Ms. Baum’s, and plaintiff did not have the union involvement depicted for Ms. Baum. No language used in the book was sufficient to enable any reader to identify Ms. Baum as plaintiff (Giaimo v Literary Guild, 79 AD2d 917 [1st Dept 1981]). The reliance by plaintiff on minimal superficial similarities between her and Ms. Baum, and speculative gossip by some people who knew plaintiff, is not enough to create any issue of fact to be tried in this action.
A plaintiff raising a libel claim against the publisher of a novel should be held to an even higher standard than on such a claim against the book’s writer. Where a book is fiction, the publisher may rely largely on an established writer’s investigation because to require publishers to do independent research regarding every possibly defamatory reference in a fictional book would likely create a prohibitory economic impediment to the book publishing industry, and thus a plaintiff must demonstrate that the publisher had substantial reasons to question portions of the book or the good faith of the author (cf. Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382-383 [1977] [same for a nonfiction book which in part reprinted a newspaper article]). As the former editor of defendant Random House, Inc. stated in his affidavit, he edited defendant Joe Klein’s manuscript as a work of explicit fiction, and thus it was not appropriate for him to require any changes to the character of Ms. Baum or the hotel incident depicted (cf. Weiner v Doubleday & Co., 74 NY2d 586, 596 [1989] [where a publisher relied on an experienced author of a nonfiction book and did conduct its own review of the book’s contents]). Defendants here needed to do no more than they did. They were neither grossly irresponsible nor even negligent.
As to plaintiffs third cause of action based on Civil Rights Law § 77, that law provides: “In an action of slander of a woman imputing unchastity to her, it is not necessary to allege or prove special damages.” The statute by its terms does not afford a cause of action but rather relates to proof of damages within an action. Furthermore, Civil Rights Law § 77 is inapplicable to this libel action because the law only concerns slander actions (Rejent v Liberation Publs., 197 AD2d 240, 244 [1st Dept 1994]). Thus, the third cause of action seeking damages for a violation of Civil Rights Law § 77 cannot stand.
Plaintiff claims punitive damages as a separate cause of action. New York State does not recognize such a claim as a *1016 separate cause of action; rather it is merely one element of the total damages of a cause of action (Green v Fischbein Olivieri Rozenholc & Badillo, 119 AD2d 345, 351 [1st Dept 1986]). Consequently, the fifth cause of action is also meritless.
Thus, defendants have shown their entitlement to summary judgment as a matter of law. Plaintiff has not demonstrated that there are any questions of fact that must be tried in this action. Therefore, by the separate decision and order of this court, the motion has been granted to the extent of awarding defendants summary judgment. The second amended verified complaint has been dismissed.