19-135-cv
*Greene v. Paramount Pictures, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of June, two thousand twenty.

PRESENT:   DENNIS JACOBS,
                    GUIDO CALABRESI,
                    DENNY CHIN,
                            *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANDREW GREENE,

                    *Plaintiff-Appellant,*

                    v.                                                    19-135-cv

PARAMOUNT PICTURES CORPORATION, A Delaware
Corporation, RED GRANITE PICTURES, INC., A
California Corporation, APPIAN WAY, LLC, A California
Limited Liability Company, SIKELIA PRODUCTIONS,
INC., JOHN AND JANE DOES 1 THROUGH 10,
                    *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:      AARON M. GOLDSMITH, Law Office of Aaron M. Goldsmith, P.C., New York, New York.

FOR DEFENDANTS-APPELLEES:      VINCENT COX (Louis P. Petrich, *on the brief*), Ballard Spahr, LLP, Los Angeles, California.

Appeal from the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Andrew Greene appeals from a judgment of the district court entered December 13, 2018, dismissing with prejudice his libel claim against defendants-appellees Paramount Pictures Corporation ("Paramount Pictures"), Red Granite Pictures, Inc. ("Red Granite"), and Appian Way, LLC ("Appian Way") (collectively, "defendants"). By memorandum and order entered the same day, the district court granted defendants' motion for summary judgment.[1] Greene sued in connection with the depiction of a character in *The Wolf of Wall Street* (the "Film"), a movie based on the activities of Stratton Oakmont, Inc. ("Stratton Oakmont"), a securities firm based in Long Island. Greene, who was a director, general counsel, and head of the corporate finance department at Stratton Oakmont between 1993 and 1996,

---

[1] The claims against defendant Sikelia Productions, Inc. were dismissed earlier in the case for lack of subject matter jurisdiction.

alleged that one of the characters in the Film presented a defamatory portrayal of him. We assume familiarity with the facts, procedural history, and issues presented for review.

## DISCUSSION

On appeal, Greene argues that the district court erred in holding that he failed to raise a genuine issue of material fact as to whether defendants acted with the "actual malice" required to prevail on a libel claim brought by a public figure. We review a decision granting summary judgment *de novo*. *See Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

The Film was based on a memoir entitled *The Wolf of Wall Street* (the "Book") written by Jordan Belfort, one of Stratton Oakmont's co-founders. Belfort wrote about various criminal and other unsavory activities at Stratton Oakmont in the 1990s. Belfort was charged with and pled guilty to, *inter alia*, securities fraud and money laundering, for which he served time in prison and was ordered to pay over $100 million in restitution. Greene is discussed extensively in the Book both under his full name, Andrew Greene, as well as his nickname "Wigwam" (a reference to his toupee). The Book describes Greene as engaging in illegal conduct at Stratton Oakmont. Despite his awareness of the contents of the Book, Greene never sought any legal redress with respect to its depiction of him.

The Film featured a character named Nicky Koskoff, who wore a toupee and went by the nickname "Rugrat." Greene contends that Koskoff is recognizable as him, and is depicted as engaging in behavior that defames his character. In particular, Greene argues that in the Film the Koskoff character engages in "adulterous/sexual acts at work" and "participate[d] in Mr. Belfort's criminal money laundering scheme," conduct he denies. Appellant's Brief at 7. Koskoff, however, was a fictitious character based on three different individuals, including Greene, who worked either at or with Stratton Oakmont. Nicky Koskoff is the real name of the husband of one of the Film's producers.

Greene has acknowledged for purposes of his libel claim that he is a public figure. To prevail on a defamation claim as a public figure, a plaintiff must demonstrate by clear and convincing evidence that the defendant acted with "actual malice," which has been defined as "knowledge that [the statement in question] was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 286 (1964). This Circuit has held that

> [A] finding of actual malice cannot be predicated merely on a charge that a reasonable publisher would have further investigated before publishing. . . . Rather, a public figure defamation plaintiff must show either that the publisher actually entertained serious doubts about the veracity of the publication, or that there are "*obvious* reasons to doubt the veracity of the informant or the accuracy of his reports."

- 4 -

*Herbert v. Lando*, 781 F.2d 298, 308 (2d Cir. 1986) (internal citation omitted) (emphasis in original); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (holding that "plaintiff must demonstrate that the author in fact entertained serious doubts as to the truth of his publication"); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (holding that to show actual malice, plaintiff must show "high degree of awareness of probably falsity"). This heavy burden of proof is designed to "assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." *Gertz v. Welch*, 418 U.S. 323, 342 (1974).

To prevail on a libel claim, a plaintiff must show that the libelous statements were "of and concerning" him. *Sullivan*, 376 U.S. at 288; *see also Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. 1987) ("A statement is not libelous unless it is 'of and concerning' the plaintiff."). To be "of and concerning" the plaintiff, a statement must "reasonably be read as accusing [plaintiff] of personal involvement in the acts in question." *Sullivan*, 376 U.S. at 288-89; *see also Springer v. Viking Press*, 90 A.D.2d 315, 320 (1st Dep't 1982) ("[T]o be actionable[,] the description of the fictional character must be so closely akin to the real person claiming to be defamed that a reader of the book, knowing the real person, would have no difficulty linking the two."). Accusations based on "unsupported assumption[s]" that the statements pertain to the plaintiff are insufficient to sustain a libel claim. *Sullivan*, 376 U.S. at 289. While this Court has not spoken definitively on defamation in the context of fictious characters,

our First Amendment jurisprudence requires a plaintiff to show both that the character is similar enough to him to be "of and concerning" him, and that the portrayal is false and defamatory. *See id.* at 288; *see also Dalbec*, 828 F.2d at 925 ("The test is whether the libel designates the plaintiff in such a way as to let those who knew [the plaintiff] understand that [s]he was the person meant.") (internal quotation marks omitted).

Here, the district court held that Greene failed to raise a genuine issue of material fact as to whether defendants acted with knowledge or reckless disregard in making defamatory statements "of and concerning" him. We agree, as Greene's claims fail as a matter of law for several reasons.

First, as a reasonable jury could only find, defendants took appropriate steps to ensure that no one would be defamed by the Film. Defendants vetted the Film to ensure that it did not violate any third parties' reputational rights. In that respect, defendants' representatives spoke to a number of people, including Belfort, and read the Book and numerous news accounts of the events depicted in the Film. They spoke to screenwriter Terence Winter, who advised that he had reduced "the number of characters [featured in the Book] by creating various composite characters who did not correspond to any single human being." Supp. App'x at 829, 837. Winter also advised that several characters in the Film, including Koskoff, were assigned fictitious names and were designed to "convey[] the atmosphere of Belfort's financial empire, but were not characters with a specific real life analogue." *Id.* at 830.

- 6 -

Second, no reasonable viewer of the Film would believe that defendants intended the Koskoff character to be a depiction of Greene. The most obvious point is that there is no character named Andrew Greene or Wigwam in the Film. Moreover, the record shows that defendants knew that the Koskoff character was a fictitious character who was a composite of three different people depicted in the Book. For example, in the Film the Koskoff character worked as a broker at Stratton who works on the trading floor. Greene, on the other hand, was the head of the Corporate Finance Department who did not work on the trading floor.

Third, the Film included a disclaimer making clear that characters in the Film are fictionalized. The following disclaimer was shown at the start of the end credits for the Film:

> While this story is based on actual events, certain characters, characterizations, incidents, locations and dialogue were fictionalized or invented for purposes of dramatization. With respect to such fictionalization or invention, any similarity to the name or to the actual character or history of any person, living or dead, or any product or entity or actual incident, is entirely for dramatic purpose and not intended to reflect on an actual character, history, product or entity.

Supp. App'x at 830.

On this record, a reasonable jury could only find that defendants did not act with actual malice. Accordingly, the district court did not err in granting summary judgment dismissing Greene's claim.

* * *

We have considered Greene's remaining arguments and conclude they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

        FOR THE COURT:
        Catherine O'Hagan Wolfe, Clerk